222731. Good morning, Your Honors, and may it please the court. My name is Alan Wolin, and I represent the appellant in this matter. Of course, for purposes of this court's review, the court reviews the district court's findings on summary judgment de novo. I think the first consideration that we have to partake in is an evaluation of the race discrimination claim. And of course, this case, as Your Honor saw in the record, has a very long history. Having been in this court, in fact, once before. And the race discrimination claim, at this point, involves two allegations. The plaintiff's termination and the issuance of a command discipline, because my client allegedly took two tours of overtime on the same day in different districts. So I submit that when we evaluate the race claim, we first have to, of course, determine whether or not the plaintiff established a prima facie case with reference to his claim. And I think the focus on there has to be the fourth element of the prima facie analysis, which is whether or not he established that his termination and the issuance of the command discipline occurred under circumstances giving rise to an inference of discrimination. And I believe when we search the record here, we should come to the conclusion that he did sufficiently, meets his minimal, and this court has indicated many times that the burden on establishing a prima facie case is minimal. Now, the plaintiff came forth with comparator testimony. He named names, and he, in fact, he was very specific with reference to both race discrimination claimants in coming forth with specific names and the circumstances under which those individuals compared to his situation. Was there anyone, any of these comparators, and I appreciate very much what you're arguing, but were any of those comparators subject to the level of progressive discipline that your client was subject to? Well, first of all, and one of my issues with the lower court's determination, Your Honor- Could you, I think that the way that I phrased the question, and you can answer it any way you want, but was it yes, yes or no? Well, I think that certainly they were of equal, if not worse, records, Your Honor. My client indicated that some of these people had prior disciplinary records. And in his situation- So, but my question was, was there any, did any of these comparators have a level, a degree of progressive discipline that your client had? Well, first of all, I respectfully state that my client really did not have a serious level of discipline. First of all, many of the- I didn't say serious, I just said, did anybody, let me ask the question again. Did any of the comparators have the degree, or the level, the extent of progressive discipline that your client had? Well, my client alleged, yes, that some of them did. And who was that? I believe that, I don't recall the names offhand, Your Honor, but there was evidence in the record that some of them had prior disciplinary records. And I think we also have to look at the severity of the allegations. He claimed that many of these other alleged comparators were sufficiently similarly situated because they in fact had done more egregious acts. So I think that supersedes the issue of progressive discipline as well. He was terminated for reasons that were much less severe than other individuals, acts that other individuals committed, who were not terminated. We have individuals who were caught sleeping on duty. We have individuals who engaged in domestic violence. We have individuals who were arrested. So one of the things that was cited, at least in connection with the disciplinary action termination, was lying to investigators. Well, was anybody disciplined, any of the comparators, disciplined for lying to investigators in connection with an internal investigation? Well, first of all, Your Honor, I believe- Can you just first answer that question? Well, the record doesn't indicate that identical comparator, Your Honor, of lying to investigators. But as I indicated, it contains other individuals who engaged in more egregious acts. And this court has held there does not have to be total identity of comparators. No, no, I appreciate that. I'm just trying to understand these other comparators. Right. I think the argument on the other side is, or one of the arguments on the other side, but I'll let counsel argue whatever counsel wants to argue. One of the arguments on the other side is that lying to investigators in connection with an internal investigation is of a different degree. It's got a different salience than other forms of misconduct. And you might agree with that, I don't know. And I think if I may say, Your Honor, I think the issue of lying to investigators was very nebulous in the record, because my client testified consistently to the investigators on both times that he was questioned. He readily admitted that he found this memo book. He readily admitted that he placed it in the gun locker. He stated that he didn't know whose memo book it was, because there was no name or other identifying identification in the memo book. So he said he didn't know whose memo book it was. The fact that the department attributed his knowledge that it was a certain individual's memo book, I think was far reaching, because he said he did not know whose memo book it was. But the testimony from the investigators in the record is that his testimony was consistent. So to say he was lying, Your Honor, I believe is certainly, if nothing else, an issue in dispute here. Now, if I can just address a couple of other points, Your Honor, with reference to the race discrimination claim with the New York City law, obviously, this court has held that an analysis of the New York City law has to be independent of the analysis on the Title VII and the New York State human rights law. And certainly, I think the record indicates that there was not a sufficient independent analysis of the New York City human rights law with reference to the race discrimination claim. And I submit that this court, upon its de novo review, should conduct that analysis. Also, Your Honors, with reference to the retaliation claim, the one having to do with the summons writing authority, which was removed from my client two months after he filed the charge of discrimination with the EEOC, and two months after he filed a notice of claim, was erroneous, the lower court held that with reference to that claim, that the responsible official did not have notice. I was just on the New York City law issue. I think that the district court opinion, but maybe I misread it, specifically says that your client fails to show that racial animus played any role. And if that's true, then that's also dispositive of the New York City human rights law claim. Is that correct? Well, not necessarily, Your Honor, because the standards are different. You just have to show- But it's any- I'm sorry, Your Honor? It's to show that someone is treated less well because of their whatever protected characteristic, right? But if there's no role, if the protected characteristic plays no role, then that seems to answer the question. Well, I do think that one, under the New York City law, you have to show that the allegation or the act would have deterred one from engaging in protected activity. So I think the standards is a little different. And- And in the district court, I'm looking at special appendix page ten in the footnote. It says, it makes that legal distinction that you just made, but it says that this distinction is immaterial to the resolution of the instant motion because of the reason the judge really just said, because he makes no showing of racial animus. Well, my point with reference to that, Your Honor, is that there should have been a more thorough analysis of the New York City law. I mean, this court has said that it has to be addressed with sufficient clarity. And I respectfully submit that the lower court did not address it with sufficient clarity. So you have reserved some time for rebuttal, two minutes. And would you like to take that up now, or do you want to- No, I will reserve, Your Honor.  Okay, thank you. Thank you so much. So we'll hear from your friend on behalf of the Metropolitan Transportation Authority. Good morning, Your Honors. William O'Connell, Goldberg Segala for Defendant Appellee, Metropolitan Transit Authority. Good morning again. I'm just going to summarize our position. We believe there was no prime of facial showing or eventually a pretextual showing by plaintiff that our conduct was against, in violation of the racial discrimination statute. Disparate treatment was the theory of the plaintiff in this case. That requires that the comparators be similarly situated in all material respects. And that was never done here. In both the summit overtime violations and the investigation on lying, plaintiff basically just speculated and assumed that these officers committed these violations. And then also did the same thing about whether they had a prior disciplinary history. You need evidence of that, and if you just are testifying to it, because he said, in fact, and it's in my brief, that yeah, this was officers talking in this shop, and it was, I think, all hearsay. So he's admitting that it's not really firsthand evidence. He's just saying that that's what I heard. But- Can you talk a little bit about, it's sometimes a quandary for a plaintiff trying to put together a disparate impact claim. As far as how deeply they get to go in discovery into disciplinary records associated with other employees. Was that an issue that played out at all at the district court here? Fair point, your honor. I believe there was some dispute during even perhaps the summary judgment briefing stage. And the MTA was required to produce confirmation or denials about certain allegations that plaintiff had sort of just assumed. But those responses were given by the MTA. And if you look at the whole basis of the record as it exists now, 75% of all the names that were given by the plaintiff, there's no firsthand knowledge of a violation and definitely no of a prior disciplinary history. Did plaintiff ask in discovery for the disciplinary records of the individuals identified as comparators? Your honor, I'd have to let plaintiff's counsel answer that question because I was only appellate counsel, so I don't know. But my knowledge is what I've stated. Your honor, there's just one note- They say in the reply and footnote, sorry, at page four, that they were not permitted to delve into the disciplinary history of the alleged comparators by way of discovery. I mean, again, maybe you don't know, but- Yeah, I don't know. I mean, obviously- You don't dispute that? I don't dispute it because I don't have any knowledge of it. I think counsel is being generic in that statement and didn't provide any details of what whether they were denied or not and what the lower court's ruling was, so we really don't have enough information on that to make a determination. But obviously there are issues, you want the information about the comparators. But in this case, it's just not competent information. No prima facie case was shown and no pretext was shown. On the retaliation claim, obviously there's a little bit of a different standard there. The two key points are adverse employment action and a causal connection. The plaintiff argues that a temporal proximity about two months between those two events and because Captain Kieran was involved in the discipline and his complaint was about Captain Kieran initially, as well as the MTA generally, that there's a connection there. But temporal proximity under second circuit law is not by itself enough to establish a retaliation claim. And the test is but for causation. The adverse action would not have occurred in the absence of a retaliatory motive. Plaintiff really just relies on temporal proximity. The comparator argument is still made in the retaliation claim, but it- I've never actually understood that. What's that? I've never actually understood that phrase or that line about temporal proximity, which is used and resorted to, and my example is if I say something, if I complain about racial discrimination, say, and you say, okay, you're fired, and I rely just on temporal proximity, that would be enough, it seems to me. This is not this case, I'm just- Understood, and I think- But that phrase is used, I think, without enough precision. I agree, but the court has also been clear that what's required usually where there's a gray area of temporal proximity is that there's some inconsistencies or weaknesses in the defendant's position about their treatment of the individual plaintiff, and that just doesn't occur in this case. Because of the competency of the evidence, and because of the prior disciplinary history that we just don't know about from these other officers. So, there's no way to show that they were treated differently because, plaintiff treated differently because of his race, and therefore, there is no extra. In other words, it's gotta be temporal proximity plus, and we don't have that here, so the retaliation claim really can't survive in that capacity. Obviously, there is an issue about, plaintiff argued that general corporate knowledge where they received about the discrimination complaint. And that Captain Kieran submitted an affidavit or declaration saying he doesn't know, he was not aware at the time of the termination about that. I mean, about the time of the summons removal, pardon me, I'm confusing claims there. But the general corporate knowledge, if the MTA knows, isn't sufficient to establish causal connection. It really does, it's a little bit of a different, I know that's a fine hair there, but it is a little bit different. In order to show that Captain Kieran, the decision maker, retaliated against it, he has to know of the complaint, and he said he didn't know under oath, and there's nothing to respond to that. I realize there's a difficulty with plaintiff, how's he going to respond to that? But that's the record as it shows in this case, and there's nothing else to dispute that. No comments or, yes, your honor. We have evidence, plaintiff says he mailed a notice of claim by certified mail return receipt to Kieran at the MTA. Yes. I would think that would be enough to support the inference that Kieran got it. It may be contradicted by Kieran's own testimony, in which case we have a disputed fact. But why isn't saying I sent it to him enough? Well, because you have that exact person giving a sworn statement saying that I didn't know. And in comparison- So you're saying any time somebody denies receiving something, that establishes as a matter of undisputed fact that they didn't receive it, regardless of somebody else saying I sent it to him, unless they looked him in the eye, I suppose, and hand delivered it. No, what I'm saying is that under the element of causal connection, that that is strong evidence, in this case, that there was no causal connection. Again, the lower court ruled that he had no such knowledge. But you have to, when you're deciding, when you're looking at the undisputed facts, you're looking at the facts in the light, most favorable to the non-moving party. You have to give the non-moving party the benefit of any inferences. And it sounds like you're saying we can't give a plaintiff the benefit of an inference that something that he mailed by certified mail return receipt to Kieran was actually seen by Kieran. We can't give him that. We have to instead accept Kieran's testimony as undisputed fact. I think because it's undisputed and uncontradicted in the evidence, that's what this court should do. And that's what the district court should have done, and it did, essentially. So I think it was the correct move. But whether that is dispositive or just very strong evidence of no causal connection, I think we can discuss that, but obviously we can discuss whatever you want. But in my view, even if you somehow said there was a causal connection based on the identity of Captain Kieran and the temporal proximity, there's still no evidence that he was retaliated against because of his race. And the comparator argument is the only thing he really has to go on here, and it just fails because of a lack of competent evidence and a lack of evidence about a long disciplinary history. I mean, that's what stands out here. Yes, Your Honor. You're confusing me. The retaliation claim, it could, I suppose, be based on race, but it could also be based on engaging in protected activity. And this act did happen after, the termination happened after he had filed his complaint. Am I wrong about that? No, you're not wrong about that. So if you're not looking at retaliation through the perspective of race, but you're looking at it through the perspective of retaliation for protected conduct, then comparators sort of drop off as a relevant aspect of the analysis. Fair point, Your Honor. But I'd also say that even if you look at the prima facie showing for retaliation where it doesn't mention at all, it says the causal connection. And it doesn't mention anything about the inference that the retaliation took place because of your membership in a protected class. To me, that has to be a part of a retaliation claim based on discriminatory animus. I'm a little confused. So if I file an EEOC complaint, an EEO complaint, is that not enough regardless of what I say to qualify as protected activity? No, I agree that that's protected activity. But I'm assuming that even if a prima facie case was established of retaliation, still there has to be a showing that this retaliation occurred because of the person's race. But it's a but for cause. Yeah, and that wasn't shown here, and I think that's when the, go ahead. You have to show that there's retaliation based on the person's race, or that there's retaliation based on them engaging in protected activity. Well, I think under the theory in this case, it has to be really both. I mean, it's protected activity. That raises my confusion. Okay. So, and I'm not here to lecture, I'm just here to ask questions. But I think, but you correct me if you think I'm wrong. I think that here the allegation is that the retaliation was because of, it's just the allegation, I'm not talking about the evidence. It's because of the filing of the EEO complaint. Regardless of what the underlying EEO complaint was about. Yes. Okay. Thank you. Your Honor, if I could just briefly also discuss the New York City claims. As we all know that there is a different standard under there. It is a more beneficial to the plaintiff in these cases. But in my view, the analysis really is the same under the comparator analysis. And plaintiff can't show that he was treated less well the same way he couldn't establish it under Title VII. Thank you. Yeah. Thank you, Your Honor. Appreciate it. We'll hear- Yeah, very quickly, Your Honor. First of all, thank you. I think counsel was conflating the difference between the race discrimination claim and the reprisal complaint. No, I was just helping. Thank you, Your Honor, for clarifying that. But with reference to the Captain Karen situation, I mean this court specifically addressed that situation in Zon Kwan case. It said this case is a good illustration of why corporate knowledge is sufficient for purposes of a prima facie case of retaliation. If that were not true, a simple denial by a corporate officer that the officer ever communicated the plaintiff's complaint, no matter how reasonable the inference of communication, would prevent the plaintiff from satisfying a prima facie case. Despite the fact that the prima facie case requires only a de minimis showing. So I think that certainly- Can you explain what role, if any, you think the arbitrator's determination plays? What role the arbitrator's determination plays in the inference of retaliation? Well, I think this court has held, I know in the Leon case and other cases, that an arbitrator's award is not dispositive in a Title VII case. The arbitration award does not take into consideration the various McDonnell-Douglas burdens, which of course apply in this case. And so even though the arbitrator might find that there was just cause behind the removal, that doesn't establish the other factors that apply in a Title VII case, such as whether or not that alleged just cause was pretextual. The arbitration never reaches that. So of course, you could have a finding of just cause and still have a determination that that determination, even if it was based upon just cause, was pretextual. So this court has held time and time again that the arbitration does not bar a Title VII case. Do you think it can come into play in the summary judgment stage, or it's just maybe a fact for the jury to consider when it's making a conclusion about an inference of retaliation? With reference, I'm sorry, you're on identity. Can it come into play in the summary judgment stage, or no, in your view, because it's not dispositive? Well, yeah, it's not dispositive, so I don't even think it's a question for the jury. It's a question of law, and I don't believe it's dispositive or a consideration. And I just want to address the issue of the discovery in this case. The low court did not permit the plaintiff to have access to the disciplinary records, and the way it was done was that he had the plaintiff furnish a list of names. And then directed the defendant to respond in letter fashion to the names that the plaintiff proposed. So that's how it happened here. There was never any access to any records permitted. When you say, I'm just filling, to fill that in a little bit. So the plaintiff sought certain information about those individuals. The court said, give their names to the defendant, and then you got a letter back recounting their disciplinary history, but it wasn't their actual disciplinary records? It didn't even go to the disciplinary history, as I recall, Your Honor. Just went to whether or not they engaged in the infraction that the plaintiff claimed they engaged in. And I do note that, again, just to address it one more second. I know my time is up, that we have to look at the comparative seriousness of the allegations. And so it doesn't have to be an absolute identity between the allegations. We just have to look at the comparative seriousness. And if you take a look at the record, Your Honors, there was deposition testimony from MTA, Internal Affairs people, indicating, yeah, that somebody was arrested who was not dismissed. And yeah, we don't tolerate sleeping on duty, even though the plaintiff had evidence that officers sleep on duty or domestic violence. So I do think my client was treated disparately, Your Honor. Thank you. Thank you very, very much. Thank you. We will reserve decision in this matter.